Baldwin, J.
It is easy to perceive that the final sentence of a Court of Probat, fairly obtained and pronounced upon the merits, by which a last will and testament is established or rejected, ought to be conclusively binding, not only upon other tribunals, but in the same forum ; and that it would be an intolerable evil, if the controversy could be renewed, from time to time, at the pleasure of the same, or even of other parties. *568 Obvious considerations of justice and sound policy require that in a proceeding of so much publicity and notoriety, intended to sanction or condemn perpetually an important muniment of title; affecting various interests, original and derivative, which time only can fully develope; and determining, prospectively, channels of succession, powers of representation, and classes of ownership ; there should be, as far as practicable, uniformity, consistency, and finality. Such a proceeding becomes, to a great extent, a mattér of public as well as of private interest; and both the general good and individual security prohibit that it should be, so far as can be avoided, in any wise uncertain, vacillating or precarious.
. These principles arise out of the general' nature of the subject: the ' application off them is of course to be regulated by the wisdom of the Courts in exercising a general probat jurisdiction, or that of the Legislature in conferring specific probat powers, and prescribing the modes of proceeding.
In Virginia, our statute law has given to certain Courts power to hear and determine all causes, matters, suits and controversies, testamentary, arising within their respective jurisdictions, and’ to examine and take the proof, of wills and grant certificates thereof; and has moreover prescribed the manner and effect of such pro-bat ; and in doing so has departed in several particulars from the probat law of the English Ecclesiastical Courts. I need not trace the history of our legislation on this subject. It will be sufficient to notice its provisions^ as settled by the act of 1785, and continued in the revisal of 1819.
The act of 1785 adopted from previous statutes a provision, unknown to the English probat law, and having ah important bearing upon the proceedings of our pro-bat' jurisdictions/ It required that probat should be had of wills of realty, as well as wills of personalty, by enactments common to both. The Ecclesiastical Courts, as *569 is well known, have jurisdiction only of wills of personalty, and regard the executor named as the only proper person to propound the will for probat, whether voluntarily, or upon the citation of others interested in the subject. He is the representative of the will, and of all interests created by it; and moreover the legal owner of the testator’s personal estate. It is therefore his right, and his duty, to obtain for the instrument the sanction prescribed by law. But it is quite otherwise in regard to the testator’s real estate. As respects that, the executor has no concern, and the Ecclesiastical Courts no jurisdiction; and there is no probat forum known to the English law.
Now, when our statute required the probat of all wills, whether of realty or personalty, without distinction, it could not, of course, without impropriety, contemplate the executor as the sole representative and propounder of the instrument; and accordingly we find that it has not done so, but has made it the duty of the Court to act upon the subject, whenever any will shall be exhibited for probat, without designating the authority by which it shall be propounded; and therefore leaving it to be propounded by any one interested in its establishment. It follows, that any will may be propounded, not only by the nominated executor, but by any legatee or devisee therein, who has an interest in establishing it, without regard to the nature of the property upon which it acts; and that such propounder, in common with others of a like interest, who may choose at any time to associate themselves with him as parties, becomes the representative of the will for the purpose of its probat, and the representative of all others of a like interest, though not formal parties, and whether cognizant of, or without notice of the proceeding.
Another departure by our statute from the English probat law, is in respect to the distinction between the probat in common form, and the probat in solemn form, *570 or per testes: the distinction is preserved in reference to the proceeding as being primary or final; but not in reference to the relative degree of proofs, or the citation ~ of parties.
jgy the ecclesiastical law, the executor, in his discretion, may take probat in what is called common form; in which, where there is no controversy, no exactness of proof is required, and most generally no examination of witnesses, but only the oath of the executor; and in which no citation of the next of kin is necessary. But a probat in that form is only primary, and any one interested in invalidating the will may thereafter compel the executor to prove it in solemn form; in which case the widow and next of kin must be summoned, and full proof made by the examination of witnesses. But under our statute, the validity of the will must be established by full legal proofs, whether upon the primary or secondary probat, and the oath of the executor to the genuineness of the will, can never avail any thing, except as a part of his official qualification after the will has been admitted to probat.
These departures from the English probat law naturally led to others. There being in England no Court of Probat for wills of real estate, the validity of the instrument, is necessarily to be determined in actions at common law, brought to recover the property; or, where the Court of Chancery obtains jurisdiction of the controversy, upon an issue of devisavit vel non, directed by that forum, if the heir at law demands it. But with us, the probat jurisdiction being extended to wills of realty, it became necessary, to preserve the jury trial in freehold controversies turning upon the validity of the instrument, 'to engraft it upon the probat jurisdiction ; and this was done by the issue of devisavit vel non required at the final probat; which being borrowed from the English chancery, was directed to be made up in a chancery proceeding, upon a bill filed to impeach the validity *571 of the instrument. The consequence is, that though the primary probat is in a common law Court, the final probat is turned over to a Court of Chancery, to be had through the intervention of a jury, impanneled by its direction, there or elsewhere. Another consequence is, that the statute requires no citation by the propounder of the instrument of the widow and next of kin, or the heirs at law, or the executor, either upon the primary or the final probat. As in the English practice, all citation is dispensed with upon the primary probat: and upon the final probat, the citation is not by the propounder of the will, but by those actively engaged in impeaching it, and brings into Court all others interested in the controversy.
The foregoing views bring us to the distinction between the effect of the probat sentence when pronounced in favour of the instrument, and its effect when pronounced against it. And here it is obvious there can be none, in regard to the second or final probat proceeding : the sentence in that is equally conclusive, whether it be for or against the will. But there is a wide distinction between the effect of a sentence for, and a sentence against the will, upon the first or primary probat proceeding. In that, a sentence establishing the instrument, though effectual to all intents and purposes, while in force, concludes nothing upon the second or final pro-bat. It is otherwise when the sentence rejects the will as invalid ; and we have to consider how far it is conclusive against a repropounding of the instrument.
It is manifest that it was the policy of our Legislature to authorize the probat of wills, whether of personalty or realty, upon an ex parle proceeding, in order to avoid the injurious delays in the administration of the assets, and the disposition of the property, which might arise in cases free from controversy, if the citation of all persons interested in the subject were made a prerequisite. The statute, therefore, provided, that “ when any will *572 shall be exhibited to be proved, the Court may proceed immediately to receive the probat thereof, and grant a certificate of such probat;” without any provision' for the convocation of parties, except that, “if any person interested shall within five years afterwards appear, and by bill in chancery contest' the validity of the will, an issue shall be made, whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties; saving to the Court a power of granting a new trial for good cause as in other trials; but no such party appearing within that time, the probat shall be forever binding: saving also (by the revised act of 1819) to infants, femes covert, and persons absent from the State, or non compos mentis, the like period after the removal of their respective disabilities.”
It will thus be seen that the statute contemplated no citation of parties Upon the primary probat of the instrument ; but substituted for it a subsequent convocation of them, by a bill in chancery, within a given period. The propounder of the will, therefore, could gain nothing by a citation of the parties upon the primary probat; for they were not bound to appear, and those not appearing could contest the will afterwards by the subsequent proceeding. This was another departure from the ecclesiastical law, and one productive of some inconvenience; for by that' law the executor has a discretion to propound the will of personals either in common form, or solemn form; and if he adopts' the latter, the sentence pronounced on citation of the widow and next of kin, whether for or against the will, is conclusive. Whereas, under our statute, any one opposed to the will might voluntarily appear and contest it, and continue the controversy in the appellate forums; and after a sentence in favour of it in the Court of last resort, some other person of like interest might renew the conflict by a bill in chancery, and so review before a *573 jury the decision of the Supreme Court of Appeals. This is to some extent remedied by our act of 1838, by which the propounder of the will may offer it at once, in the proper Circuit Court, for final probat, convene by citation all persons interested in the subject, and prosecute the case to a conclusive sentence, for or against the will. There are other valuable provisions in this statute, which need not be here noticed, as the mode of proceeding which it authorizes is entirely discretionary with the propounder, and the case now before us has its origin under the previous statute.
It will be further seen that the act of 1785 is silent as to the effect of a sentence against the will upon the first propounding, and contains no provision whatever in that event for a repropounding of the instrument. The question, therefore, whether such a sentence is a conclusive bar against any future propounding of the will, is to be determined by the general principles of law applicable to such a judgment.
And here I need not consider whether if no one contests the probat of the will, and yet the Court decides against it, and the sentence consequently is not inter partes, the instrument can afterwards be repropounded by the same person: nor whether, though there be a contestant, if by reason of some surprise, accident or mistake, the merits of the case be not heard, and a like sentence be pronounced against the propounder, from which circumstances preclude him from appealing, he can afterwards be allowed to repropound the instrument. The facts of this case present no such questions. Here, the merits were developed on the first propounding, and inter partes, the only next of kin and heir at law interested in disputing the will, and her husband, having appeared as defendants in opposition to the probat: and here, the repropounder is a different person from the first, but having a like interest in establishing the validity of the instrument.
*574 The general rule that judgments are evidence only agaiust parties and privies, is not applicable to a procccding like this, in which the object is not a recovery by one person against another, but the establishment of an jmp0rtant muniment of title, to which all persons may appeal in all time to come. The thing determined is the matter of testacy or intestacy, and the rights of persons are affected only incidentally and consequentially, and not because they were parties to the judgment, but because such a judgment has in fact been rendered. The sentence operates in rem, upon the instrument itself, which it establishes or condemns; and is analogous to the sentence of a Court of Admiralty upon a question of prize, or that of the Exchequer upon a question of forfeiture; which are binding upon all persons, whether parties to the proceeding or not.
In probat matters, it is true, it is proper for Courts exercising a general jurisdiction over the subject, by their decisions, or for the Legislature, by its enactments, to establish such rules of citation, notice or publicity, as justice and good policy may seem to require ; and such rules when prescribed, must of course be obeyed. But there is no inherent necessity for any given regulations of that nature : they may indifferently require a special summons, or a general publication or proclamation, or leave the matter to rest upon the mere notoriety or publicity of the proceeding itself. In regard to opponents of the instrument, our Legislature has given them every opportunity of contestation that could be desired. In regard to its advocates, the opportunity of asserting and establishing its validity, in the first instance, arises out of the very nature of the proceeding. They, or one or more of them, have the possession of the instrument, or the means of obtaining it; thejr may select their own time for propounding it, and all requisite means for sustaining it; they have a common cause, and may unite formally or substantially in its prosecution, or leave it to *575 those most capable, zealous and active. All may aid in .... promoting the common interest, according to their soveral capacities, means and inclinations : any one may interpose at pleasure as a formal party, before the rendition of the sentence, or afterwards in renewing and pursuing the controversy in an appellate forum.
It follows from these considerations, and as a matter of necessity, that under our statute, a sentence against the propouuder of the instrument is a sentence against all claiming under it. He is the champion of the common cause, and charged to keep the lists against all antagonists, and not the less that some of his associates may be disabled by infancy, coverture or other impediments. If this were not so, then the contest might be made interminable, by the separate and successive pro-poundings of the several claimants under the will.
This construction of our statute conforms to the pro-bat law of the Ecclesiastical Courts, by which there can be no repropounding of the instrument, after a sentence against it upon the merits, whether the former propounding has been in solemn form or in common form. The rule is well established, and the cases cited in the argument as tending the other way have, it seems to me, no application: they were not cases (with one exception, where the sentence was not upon the merits,) in which the instrument, whether a will or a codicil, had been rejected, but in which it had been admitted to probat in common form, and a repropounding was called for by some one interested in defeating the instrument, in the whole or in part; such as a next of kin who happened also to be a legatee, or a legatee in a former will, or in a subsequent will or codicil. And in such cases, the executor does not represent the interests of the legatee, and cannot do so, being in direct hostility thereto.
The rule which I have thus stated broadly, that the sentence of a Court of Probat rejecting a propounded will as invalid, is conclusive against all persons claiming *576 under it, is subject, however, to an important exception. If the sentence has been fraudulently obtained, by collusion between the propounder and the contesting party, it is binding only between themselves, and cannot affect tpe rjghts of others claiming under the instrument. The propounder, when acting fairly, represents the will, and all interests created by it; but when guilty of collusion, he represents none but himself and the adverse party. This exception rests as well upon the general principles of law, as the cases in the Ecclesiastical Courts, which recognize the right of a legatee, under such circumstances, to have the instrument repropounded.
In the case before us, the will in question was propounded for probat in the Circuit Court, on the 6th of December 1826, by Thomas L. Spraggins, the husband of a deceased daughter of the testator, and the father of her children, who were principal devisees and legatees in the will, and who, in the event of intestacy, would have been entitled to a large share of his estate, as heirs at laiv and distributees. There can be no doubt of the authority of Spraggins to propound the will; whether as executor, or as trustee for his children, or as their natural guardian, is unimportant. The probat was contested by Nancy Wills, the only other daughter of the testator, and her husband James Wills ; neither of whom took any interest under the will, but whose only child, William B. Wills, was a legatee to a considerable anjount. The contest was earnestly and vigorously conducted on both sides, and on the 7th of December 1827) after the cause had been fully heard upon its merits, the Circuit Court pronounced its sentence against the will. The whole evidence was spread upon the record, and the plaintiff, Spraggins, took an appeal to the Court of Appeals, where the appeal was dismissed, by the written direction of the appellant, on the 9th of June 1830. This dismission was the result of a compromise, made between' the appellant, Spraggins, and *577 the appellee, Wills, pending the appeal. By the terms of the compromise, the whole estate, real and personal, after providing for the widow’s dower, was divided between James Wills and the children of Spraggins, the latter getting much the larger share of the estate, and the legatee, William B. Wills, nothing, except one slave, not bequeathed to him by the will. On the supposition that the will ought to have been established, the rights of William B. Wills were completely sacrificed ; he being deprived of his whole legacy, consisting of a pecuniary bequest of 5000 dollars, and a female slave with her increase.
At the time of this sentence, appeal, compromise and dismission, William B. Wills, the disappointed legatee, was an infant of tender years, and no party to the proceedings, otherwise than as represented by the propounder Spraggins. On the 20th of April 1844, nearly seventeen years after the sentence against the will, but within seven years after William B. Wills had attained full age, he moved the Circuit Court by petition for leave to repropound the instrument. In this proceeding, he conformed to the provisions of the act of 1838, by citation of the other persons interested in the question of probat: they appeared and contested the re-propounding : the evidence on both sides, embracing the record of the former proceedings and testimony, and some additional evidence of but little importance, was heard; and the Circuit Court, on the 17th of May 1845, overruled the motion to repropound the will, and dismissed the petition. And to that sentence, this supersedeas has been granted.
If the sentence of the Circuit Court against the will, in December 1827, had been brought about by a compromise, such as was afterwards made, I should have no hesitation in saying that it was collusive and fraudulent as regards the rights of William B. Wills, and that his proper remedy, if he came in due time, as to which I *578 express no opinion, was to repropound the instrument: and I would say so without enquiry whether the former sentence had been in conformity with or against . the merits of the case. In that aspect, William B. j/ynis WOuld have been deprived of a hearing upon the merits: the former sentence would be properly treated, in regard to him, as a mere nullity; and he would have a right to be heard de novo. But such is not the case presented by this record. The sentence was in no wise collusively or fraudulently obtained. On the contrary, the record of the former proceeding furnishes intrinsic evidence, needing no confirmation, but which is completely sustained by the testimony on the repropounding, that the case was fully heard upon the merits, without any fraud or collusion whatever, and after active, diligent and skilful efforts on the part of the propounder Spraggins, to establish the validity of the will, and procure its admission to probat.. The compromise was entirely made after the sentence of the Circuit Court against the will, when that Court had no longer any control over the subject, and during the pendency of the appeal.
The motives for the compromise are quite obvious. James Wills secured to himself thereby a portion of the estate, whátever might otherwise have been the result of the appeal; for though an affirmance would have given him an interest in right of his wife, a reversal would have left him nothing. On the other hand, Spraggins obtained by it for his children, though not so great an interest as was given them by the will, yet much more than in case of intestacy. The parties to the compromise probably thought that they had a right to submit to the sentence, (as they unquestionably had,) and upon such terms as they chose to agree upon ; but they forgot the duty of having due regard to the interests of the disappointed legatee. In this they acted unjustly, and in this only. If the compromise had se *579 cured to him a substantial and reasonable interest in the subject, it would have been difficult to perceive upon what ground he could have had cause of complaint. At the worst, he has lost only the chance, if I may so speak, of reversing a sentence to his prejudice, fairly obtained, upon a full hearing of the merits.
Still, if I could see my way clearly to affording him redress, I would be glad to do so. But here is the difficulty which lies at the threshold: what power could the Circuit Court have to reverse its own final judgment, fairly obtained, upon a hearing of the merits, between the proper parties ? Not more, I presume, than it would have had if that judgment had been deliberately affirmed by the Court of Appeals. And yet, if the Circuit Court had sustained the repropounding, and admitted the will to probat, it must thereby have reversed substantially its own previous judgment rendered many years before. The judgment was neither void nor voidable, there having been no fraud or covin in obtaining it;' and could only be vacated by a judgment of reversal in an appellate forum. If it was right upon the merits at the time it was rendered, it remains so still, and is unimpeachable : if wrong upon the merits, and the repropounding can only be reached by treating it so, and disregarding its force and efficacy, what is that but a judgment of reversal ?
In truth, a repropounding is allowable, not upon the gronnd that a former sentence was wrong upon the merits, but because the repropounder was unfairly represented, and therefore is not to be treated as a party to the former proceeding ; and upon the latter ground, the repropounding is equally allowable, whether the former sentence was right or wrong. The former sentence may have been perfectly right upon the merits, as then disclosed by the evidence; and yet the repropotmder may begin de novo, and shew by his new evidence that the merits lie the other way : and simply for the reason *580 that he is not concluded by the former sentence. And whether he be so concluded, or not, turns upon the mere question, whether the former judgment was fairly or fraudulently obtained.
jj. seems t0 me clear, that a subsequent fraud cannot retroact upon a prior fair judgment. If the disappointed legatee was aggrieved by being excluded from the benefits of the compromise, his mode of redress was a bill in equity to be admitted to a due participation. If the grievance was the dismissal of the appeal, then his redress was in regard to that matter, and the mode of it the prosecution of an appeal himself, to which he was entitled as a substantial party to the proceeding in rem. If from any defect of our legislation at the time, or any change in our legislation afterwards, he was precluded, under the circumstances in which he was placed, from exercising the right of appeal, that misfortune cannot entitle him to another mode of redress unwarranted by law.
The grievance, moreover, of which the appellant complains, would seem to have been, not certain and absolute, but hypothetical and contingent. His complaint is founded upon the supposition that if the compromise had not been made, Spraggins would have prosecuted his appeal, and that the result would have been a reversal of the former judgment. But, in the first place, how can it be ascertained that Spraggins would have prosecuted his appeal, though no compromise had been made ? He might still have chosen to dismiss it, and in that state of things, no one can deny that he would have had a perfect right to do so. And, in the next place, how can it be known that if the appeal had been prosecuted, the judgment would have been reversed ? We may, it is true, look into the evidence on which it was founded, which happens to be spread upon the former record, arid possibly form an opinion, incidentally and collaterally, that the judgment ought to have been reversed; but *581 that would be a matter of opinion ; and how can we be certain that it would have prevailed upon the direct appeal from that judgment ? And if we were to allow ourselves to form such an opinion, how could we act upon it, in the face of the former judgment, which has not been, and never can be, brought before us by an appeal ; and which is as completely beyond our reach as if it had been affirmed by this Court. Besides, the question before us is not, whether the Judge of the Circuit Court erred in not admitting the will to probat, but whether he erred in overruling the motion to repropound it. It was that preliminary question alone, which he had the power to decide: for the re propounding was under the statute of 1838, which requires that the merits of the case shall be decided by a jury, upon an issue of devisavit vel non, unless the parties should consent to waive that mode of trial, and submit the merits to the decision of the Court.
It is therefore not competent for us to decide that the will ought to have been established by the former judgment, nor that it ought to be now established ; but we are to decide whether it can be repropounded; and that depends exclusively upon the question, whether the repropounder was substantially a party to the former judgment. 1 think he was, there being no ground for believing that the former judgment was obtained by collusion or fraud; and it seems to me to follow inevitably, that he is concluded thereby. It is true, the appeal from that judgment was a continuation of the same proceeding ; but it is equally true that it was a continuation of the same judgment, which, though suspended as to its execution, remained in full force and efficacy, as the final and conclusive decision of a Court of competent jurisdiction, until reversed by an appellate forum.
My opinion is, that the judgment of the Circuit Court, overruling the motion to repropound the will, ought to be affirmed.
*582 Allen, J. concurred in the results of Baldwin’s opi«1011.
Brooke, J. thought there was but one question in tpe cause. That was whether there was fraud in dismissing the first appeal. And having the record in that case before the Court, and being of opinion the judgment of the Superior Court of Charlotte was right, he did not consider it important, whether there was, or was not fraud in dismissing the appeal.
Cabell, P. dissented.